UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BORGWARNER ITHACA LLC,

       Plaintiff,

vs.

PRINICPAL MANUFACTURING CORP.,

       Defendant.

Case No. 18-cv-13970
Hon. Mark A. Goldsmith

_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 23)**

This matter is before the Court on Defendant Principal Manufacturing's ("Principal") motion to dismiss (Dkt. 23). The issues have been fully briefed. Because oral argument will not aid the decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, Principal's motion is denied.

**I. BACKGROUND**

Principal supplies products to Plaintiff BorgWarner Ithaca LLC ("BorgWarner"), which in turn supplies products to Ford Motor Company. 2d Am. Compl. ¶¶ 7-8 (Dkt. 17). At issue in this case are two purchase orders, numbered 902660 and 902661, to supply Intake and Exhaust Inner Plate components. Id. ¶¶ 6, 9. The "Purchase Order Terms and Conditions" specify that the orders are requirements contracts (unless otherwise stated on the face of an individual purchase order), meaning that Principal has agreed to supply 100% of the parts that BorgWarner requires for its production. Id. ¶ 11, quoting Purchase Order Terms and Conditions, Ex. 2 to 2d Am. Compl., at 1 (Dkt. 17-2). As part of a settlement agreement following poor production quality in 2017,

1

"Principal [also] acknowledge[d] and confirm[ed] that no price increases are permitted under the parties' supply arrangement except as provided in the applicable P.O.'s, and the governing terms and conditions (i.e. the BorgWarner standard P.O. Terms and Conditions)." Id. ¶ 15, quoting Settlement Agreement, Ex. 5 to 2d Am. Compl., at 2 (Dkt. 17-2).

Ford's contract volumes are based on weekly volumes, referenced as APW (average per week) and MPW (maximum per week). 2d Am. Comp. ¶ 18. These APW and MPW figures refer to the "capacity commitment" of the supplier. See, e.g., Purchase Order 902660, Ex. 3 to 2d Am. Compl. (Dkt. 17-2). Until December 31, 2018, the requirement was 14,170 APW and 15,520 MPW. 2d Am. Compl. ¶ 19. In May 2018, Ford informed BorgWarner that it would require an increase in parts to 15,443 APW and 16,990 MPW as of January 1, 2019. Id. When alerted of the change, Principal demanded a large piece price increase, id. ¶ 20, to which BorgWarner responded that this was a violation of the settlement agreement, id. ¶ 21. Principal asserted that it was only required to provide a maximum weekly volume of 15,520 units, and claimed that it did not have the manufacturing capacity to meet the 16,990 MPW volume. Id. ¶ 22.

BorgWarner filed this suit, requesting a declaratory judgment that Principal has contractual obligations that it must continue to supply parts to BorgWarner. BorgWarner also filed a motion for preliminary injunction, which was later resolved via a stipulated order (Dkt. 21). Principal has now filed a motion to dismiss.

## II. STANDARD OF REVIEW

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008). To survive a Rule 12(b)(6) motion, the

plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that it is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555-556.

Evaluating a complaint's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Although a complaint that offers no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" will not suffice, id. at 678, it need not contain "detailed factual allegations," Twombly, 550 U.S. at 555; see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("[S]pecific facts are not necessary . . . ."). Rather, a complaint needs only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote. Twombly, 550 U.S. at 556.

### III. ANALYSIS

Principal raises a number of arguments in favor of dismissal. Principal contends (i) that the plain language of the contract caps Principal's obligation to deliver parts at the MPW stated therein, (ii) that the settlement agreement did not change the terms of this obligation, and (iii) that the MPW stated on the 2018 order forms was not a mere typographical error. The premise on which all of Principal's arguments rely is that the contract is clear on its face. But this is not so.

"In reviewing a Rule 12(b)(6) motion to dismiss, the Court may resolve issues of contract interpretation when the contract is properly before the Court, but must resolve all ambiguities in the contract in Plaintiffs' favor." Ajuba Intern., L.L.C. v. Saharia, 871 F. Supp. 2d 671, 689 (E.D. Mich. 2012) (internal quotation marks omitted). "A court should not choose between reasonable

3

interpretations of ambiguous contract provisions when considering a motion to dismiss under Rule 12(b)(6)," meaning that the "construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." Id. (internal quotation marks omitted).

Here, from the face of the complaint and the attached contract, it is clear is that the parties agreed to enter into a requirements contract unless otherwise stated on the face of the purchase order. See Purchase Order 902660. BorgWarner argues that there is no such language that would negate the requirements contract, while Principal contends that the inclusion of a maximum capacity commitment per week requires a finding that it cannot be required to produce more than that amount without it constituting a new contract. Thus, this case seemingly turns on what "capacity commitment" means.

The contract provides no guidance in determining the meaning of the term "capacity commitment." "Where a contract provides little guidance in interpreting a disputed term, we may properly look to the plain language of the contract; to relevant dictionary definitions of the term; to other decisions of courts that have previously interpreted the term; to the standards and practices within the relevant industry; and to how the parties' actions during the pendency of the agreement have reflected an understanding of the term." City of Wyandotte v. Consolidated Rail Corp., 262 F.3d 581, 586 (6th Cir. 2001) (internal citations omitted). The phrase has never been used in court opinions in this context, and it appears in neither a lay nor a legal dictionary.

Thus, the Court turns to the standards of practices in the industry. Oddly, Principal provides no working definition for the term, instead insisting that the contract unambiguously determines that it can not be required to exceed the MPW agreed to therein. But it is unclear on the face of the contract to what the MPW refers. It could be, as Principal contends, that by agreeing

4

to a maximum capacity commitment, it was in essence agreeing to a maximum production amount. But BorgWarner has an alternate interpretation. BorgWarner, citing the definition used by Ford, insists that the term "capacity commitment" refers to "the weekly production the supplier is expected to be able to achieve when running at full capacity." Pl. Resp at 7 (Dkt. 24). This explanation is plausible, and it would not limit the production <u>required</u> by Principal; rather, it would only limit the production <u>expected</u> by Principal. Using this definition of the term in the context of a requirements contract, the parties agreed that Principal would produce the number of parts that BorgWarner requested, but that Principal had the right to refuse to produce above the MPW <u>if and only if</u> it were unable to do so. The complaint alleges that Principal has the ability to meet the uplift. 2d Am. Compl. ¶ 25.

In the absence of a clear definition of "capacity commitment" in the contract itself or in modern parlance, the Court is required to resolve the ambiguity in BorgWarner's favor. <u>See</u> <u>Ajuba</u>, 871 F. Supp. 2d at 689. Accordingly, the motion to dismiss cannot succeed.

### IV. CONCLUSION

For these reasons, the Court denies Principal's motion to dismiss (Dkt. 23).

SO ORDERED.

| | |
|---|---|
| Dated: May 2, 2019<br>Detroit, Michigan | s/Mark A. Goldsmith<br>MARK A. GOLDSMITH<br>United States District Judge |

5